IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| GINA MARIE LAUSIN, by and through her mother, Sharon Lausin, *et al.*, | ) ) ) | Case Number: 1:09 CV 512 |
| Plaintiffs, | ) ) | JUDGE DONALD C. NUGENT |
| v. | ) ) | |
| NATHAN BISHKO, *et al.*, | ) ) | MEMORANDUM OPINION |
| Defendants. | ) ) ) | |

This matter is before the Court on the Motion of Defendants Nathan Bishko, Terry Wallace, Walter Calinger and Richmond Heights Board of Education for Summary Judgment (ECF #39) and the Motion of Defendants Michael Gerl, Denise DeBiase and the City of Richmond Heights for Summary Judgment.  (ECF #41)  For the reasons set forth below, the Defendants' Motions are hereby GRANTED.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiff Gina Lausin was a student at Richmond Heights High School when the incident at issue occurred.  On the morning of March 21, 2006, a threatening message was found on the

---

[1]

  Except as otherwise noted, the factual summary is based solely upon the undisputed facts set forth in the parties' statements of facts, the Plaintiffs' Amended Complaint, and the deposition transcripts filed with the Court as part of the summary judgment motion briefing.  Those facts which are contested and have some support through deposition testimony, affidavit, or other evidence shall be construed in the light most favorable to the Plaintiffs, the non-moving parties.

wall of the girl's restroom at Richmond Heights High School. (Nathan Bishko Dep. at p. 7)  The

message stated: "At 12 o'clock Tuesday I will kill all black niggers with my pistol". (photograph

of writing is Ex. H to Sharon Lausin Depo.)   The message was discovered by two students at

approximately 8:00 a.m.  The students immediately informed the Dean of Students, Defendant

Nathan Bishko, of the message.  (Bishko Depo. at p. 16-17).  Mr. Bishko and director of school

security, Russell White, reviewed video of students entering the girl's restroom prior to

discovery of the threatening message.  (Id.)  The video showed Gina Lausin entering the girl's

restroom shortly before the message was discovered.[2]  Based upon his previous contact with Ms.

Lausin, including her complaints about an African-American student and other comments made

by Ms. Lausin regarding African-American students and her general unhappiness at Richmond

Heights High, Mr. Bishko decided to investigate her possible involvement in this incident.[3] (Id.)

While Mr. Bishko was investigating the matter, school officials contacted the Richmond Heights

Police Department to assist with security and the investigation of the threat. (Wallace Depo. at p.

18)  The School took pictures of the threatening writing on the bathroom wall and then cleaned

the wall before the police arrived. (Bishko Depo at p. 16-17).

---

[2]

Plaintiff notes that as many as twenty girls went into the girl's restroom prior to the
discovery of the graffiti, but contends that only Gina Lausin was interviewed.  The
School Board Defendants contend that Mr. Bishko and Mr. White interviewed multiple
students regarding the threat during their preliminary investigation. (Wallace Depo at p.
20).

[3]

Gina Lausin identified another student who wrote racially derogative comments in her
notebook and told the school officials that that student was in the girl's restroom on the
morning at issue.  Gina contends that that student was not questioned about this incident
nor was another student who Gina identified to school officials as having a racist My
Space page.

2

Ms. Lausin was summoned to Defendant, Principal Terry Wallace's office to discuss the message.  (Gina Lausin Depo. at p. 46; Wallace Depo at p. 14-15).  Sharon Lausin, Gina's mother was also present during the meeting with Dr. Wallace. Also present at that meeting were Mr. Bishko and Mr. White.  (Gina Lausin Depo at p. 60; Wallace Depo at p. 14-15).  Dr. Wallace showed Sharon Lausin a photograph of the threatening meassage. (Sharon Lausin Depo at p. 26).  Dr. Wallace asked Gina if she had written the threatening  message on the wall. Gina denied writing the message on the wall. (Gina Lausin Depo at p. 61).  At the request of Mr. Bishko Gina  provided the school with written homework assignments in order to compare her writing to the writing on the bathroom wall. (Bishko Depo at pp. 31-32). Thereafter, Sharon Lausin asked if they could leave and Gina and her mother left the school. (Sharon Lausin Depo at pp. 30-31).

Dr. Wallace states that additional students were questioned by school officials and that Gina's locker was searched and notes containing racial slurs that had been exchanged between Gina and her friend were discovered. (Wallace Depo at pp. 13-14, 20)  All of the information gathered during the school's investigation was turned over to the Richmond Heights Police Department. (Bishko Depo at p. 33).

Defendant Richmond Heights police detective Denise DeBiase, reported to the high school at about 11:00 a.m. for "officer presence."  At that time the school was fairly chaotic because many parents were picking up their children and other students were attempting to contact their parents. (DeBiase Depo at pp. 13-14 and Debiase Report p. 1).  Detective DeBiase met with Principal Wallace who advised her that the school had compiled a list of potential suspects and directed her to meet with Mr. Bishko about the surveillance video and the suspects

3

observed. (Id.)   Mr. Bishko advised Detective DeBiase that they had searched the lockers of all of their potential suspects and interviewed some of the students, all of whom denied writing the threat. Based upon the video and his personal experience with the students, Mr. Bishko thought that Gina Lausin was a possible suspect and explained that she was calm during her interview, which was unusual for her as she would normally have become defensive.(Id.)

At the request of the school, Police Chief Rowe, Lieutenant Robert Glaettli and Defendants Sgt. Gerl and Detective DeBiase met at the Board of Education at approximately 1:30 p.m. with Defendant Walter Calinger, Superintendent of the Richmond Heights Schools, Dr. Wallace, Mr. Bishko and Mr. White.  (Rowe Aff. ¶5).  The school officials advised the police that based upon the surveillance video and comparison of Ms. Lausin's written homework and the threatening message, as well as her prior racial comments to Mr. Bishko, that Gina Lausin was a primary person of interest. (Gerl Depo at pp 16-19).

After that meeting, Mr. Bishko and Mr. White, in the presence of Sgt.Gerl and Detective DeBiase searched Gina Lausin's locker for additional school papers.  (Gerl Depo at 20; DeBiase Depo at p.31).  A notebook with racial slurs was found, as well as a statement written on the inside of the locker which stated "I hate this f***ing school."  (Gina Lausin Depo at pp. 68-69; Gerl Depo. at pp. 20-21).  Based upon the similarities between the handwriting samples taken from Gina's locker and the handwriting of the threat, as well as the information provided by the school, Sgt. Gerl and Detective DeBiase determined that Gina was a primary person of interest and should be questioned first. (Gerl Depo at pp. 23-24; DeBiase Depo at pp. 35-36).

Later that afternoon, Sgt. Gerl and Detective DeBiase went to the Lausin residence. (Gerl Depo at p. 28)  Gina's mother Sharon Lausin told the officers that Gina did not write the

threat. (DeBiase Depo at pp. 36-37).  Sgt. Gerl and Detective DeBiase told Sharon Lausin that

they wanted to take Gina to the police station for questioning.  (Gerl Depo at 29). Sharon Lausin

did not object and Gina voluntarily got into the back seat of the police car without handcuffs.

(DeBiase Depo at pp. 37-38; Gina Lausin Depo at p. 144).  The officers told Sharon Lausin she

could come to the police station in her own car. (Gerl Depo at p. 30)

At the police station, Gina was taken to an interview room and read her Miranda rights.

(Rowe Aff. ¶6).  Gina stated that she understood her rights and did not ask for an attorney or her

mother to be present, even though she knew her mother was at the police station. (Gerl Depo at

p. 42; Rowe Aff. ¶5; Gina Lausin Depo at. Pp101, 146-147).  The entire interview was

videotaped and Gina Lausin was aware of that fact. (Rowe Aff. ¶6; Gina Lausin Depo at pp 145-

146).  Sgt. Gerl and Detective DeBiase described the evidence indicating that Gina had written

the threat.  Gina initially denied writing the threat but after further discussions with the officers

admitted to writing the threatening message. (See transcript of videotaped interview submitted as

Ex. 1 to Affidavit of Amy K. Sanovich).  The actual interview lasted about 15-20 minutes. (Gerl

Depo at p. 48; DeBiase Depo at p. 48). Gina wrote a statement confessing to writing the threat

and apologizing for her actions.  Sgt. Gerl and Detective DeBiase witnessed Gina sign her

confession. (DeBiase Depo at p.54).

The police notified the school that Gina had signed a written confession.  (Bishko Depo

at p. 45; Gerl Depo at p.57).  Thereafter, Dr. Wallace, Mr. Bishko and Mr. White held a

suspension hearing at the police station.  The hearing was attended by school officials Wallace,

Bishko and White and Gina and Sharon Lausin. (Bishko Depo at pp. 146-49) Gina was informed

of the reason for the suspension hearing and was given an opportunity to speak. Once again she

5

confessed to writing the threat on the wall. (Id.; Calinger Depo at pp. 33, 38)   Dr. Wallace read a Notice of Removal and/or Intended Action and told Gina she would be suspended for ten days because of her actions.  Gina signed the suspension form. (Gina Lausin Depo at pp. 103-104 and Ex. D-suspension form)

The school officials advised Detective DeBiase that they would issue a statement to the media that appropriate action had been taken and a suspect had been identified. (Rowe Aff. ¶5)

Detective Debiase met with the County juvenile prosecutor who advised that Gina Lausin would be charged as being delinquent for inducing panic, criminal mischief and ethnic intimidation. (Id.)

A school expulsion hearing was held on April 3, 2006, before the Richmond Heights Schools Superintendent Dr. Walter Calinger. (Calinger Depo at pp. 18-19) Gina was represented by an attorney at the hearing.  Sharon and Gina Lausin both testified at the hearing.  Gina presented expert testimony from an alleged polygraph expert and a report from an alleged handwriting expert. (Sharon Lausin Depo at pp. 57-59).  Following the hearing, Dr. Calinger determined that Gina should be expelled for a period of 80 days. (Id. at p. 59; Calinger Depo at pp. 37-38).  Gina appealed the expulsion to the Richmond Heights Board of Education. (Sharon Lausin Depo at p. 60).

After a handwriting analyst reviewed Gina's handwriting samples and determined that no conclusive opinion could be offered as to whether or not Gina Lausin wrote the questioned writing, and after Juvenile Court Judge Peter Sikora granted Ms. Lausin's motion to suppress the confession, the County prosecutor's office dismissed the charges against Gina Lausin.

On January 13, 2007, an expulsion appeal hearing took place before the Board of

Education. (Gina Lausin Depo at p.52, and Ex. G Resolution of the Board).  The Board affirmed the expulsion on February 12, 2007, but resolved that any reference to the expulsion be removed from Gina's permanent record. (Id.)  Gina graduated from Regina High School in the Spring of 2007. (Gina Lausin Depo at p. 14).

Plaintiffs filed a lawsuit on March 21, 2007, in the Court of Common Pleas for Cuyahoga County, Ohio against the Richmond Heights Board of Education, Dr. Calinger, Dr. Wallace and Mr. Bishko (the School Board Defendants) and against Sgt. Gerl, Detective DeBiase and the Richmond Heights Police Department (the Police and City Defendants).  The Police and City Defendants removed the action to this Court on April 25, 2007.  On May 16, 2007, the School Board Defendants and Plaintiffs executed a Joint Stipulation in which Plaintiffs stipulated that no state constitutional claims, federal constitutional claims, or federal claims were asserted against the School Board Defendants.  On that same day, the School Board Defendants filed an objection to removal.  The Court treated the School Board Defendants' objection to removal as a motion to remand.  Finding that all defendants must agree to removal and that none of the exceptions to this rule were applicable in this instance, the Court remanded the action to the Court of Common Pleas for Cuyahoga County.

While the action was still pending in this Court, the School Board Defendants' filed a Motion for Judgment on the Pleadings.  That motion remained before the state court after remand.  Plaintiffs filed a motion to amend their complaint to add state and federal constitutional claims, as well as a claim that the School Board Defendants had failed to serve notice of Plaintiff's expulsion. The state court denied the motion to amend the complaint to add state and federal constitutional claims and federal claims finding that Plaintiffs were bound by their

7

stipulation entered in the federal court.  The court granted Plaintiffs' motion to amend to add the

claim that the School Board Defendants' failed to serve notice of Plaintiff's expulsion.  In the

same Order, the court granted the School Board Defendants' motion for judgment on the

pleadings regarding Plaintiffs' state claims finding that the school board and its agents were

entitled to immunity under R.C. § 2744.  On February 28, 2008, the court entered an Order on

the docket stating that Plaintiffs had until 5 days from the date of the Feb. 28, 2008 Order to file

their amended complaint or the School Board Defendants would be dismissed as no claims

would remain pending against them.  On March 6, 2008, Plaintiffs filed a notice of voluntary

dismissal.  On March 13, 2008, the court entered an order dismissing the action without

prejudice based upon the Plaintiffs' notice of  dismissal.

The present case was filed in this Court on March 6, 2009, against the same School

Board and Police and City Defendants as in the former action.[4]  The Amended Complaint in this

action purports to assert claims against the Board of Education Defendants pursuant to 42 U.S.C.

§ 1983 alleging an improper search and seizure in violation of Plaintiffs' rights under the Fourth

and Fourteenth Amendments of the United States Constitution; procedural and substantive due

process violations.  While there are no specific state claims set forth, the Court assumes that

Plaintiffs think that they asserted such claims as the Amended Complaint states that this Court

has supplemental jurisdiction over state claims under 28 U.S.C. § 1367. (Amended Complaint,

¶1). The claims against the individual school board defendants Walter Calinger, Terry Wallace

_____

[4]

The Amended Complaint does not separate or specifically identify claims against the
various Defendants.  As such it is very difficult to discern exactly what Plaintiffs' causes
of action are.  The Court will do its best to interpret the Amended Complaint, but does
not feel constrained to evaluate potential claims that have not been clearly identified.

8

and Nathan Bishko are asserted in their official and individual capacities.  Plaintiffs also assert

claims against the City of Richmond Heights and Sgt. Gerl and Detective DeBiasi pursuant to 42

U.S.C. § 1983, alleging that these defendants singularly and collectively denied Gina Lausin her

civil rights guaranteed under the United States Constitution to be free from unwarranted search

and seizure, false imprisonment and unlawful arrest and denied her due process.  Plaintiffs assert

that the City of Richmond Heights has a pattern and practice of acting contrary to the known law

and the City's policies and procedures.  Plaintiffs also purport to assert various state claims.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when the court is satisfied "that there is no genuine

issue as to any material fact and that the moving party is entitled to a judgment as a matter of

law."  FED. R. CIV. P. 56(c).  The burden of showing the absence of any such "genuine issue"

rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of
> informing the district court of the basis for its motion, and identifying those
> portions of 'the pleadings, depositions, answers to interrogatories, and admissions
> on file, together with affidavits, if any,' which it believes demonstrates the
> absence of a genuine issue of material fact.

*Celotex v. Catrett*, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56(c)).  A fact is "material"

only if its resolution will affect the outcome of the lawsuit.  *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 248 (1986).  Determination of whether a factual issue is "genuine" requires

consideration of the applicable evidentiary standards.  The court will view the summary

judgment motion in the light most favorable to the party opposing the motion.  *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial

9

does not establish an essential element of their case.  *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322).  Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252).  Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment.  *Anderson*, 477 U.S. at 249-50 (citations omitted).  In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict."  *Id.* at 252.

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmover.  The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury."  *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).  FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate.  *Id.*

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in

favor of either party." *Anderson,* 477 U.S. at 250.

## DISCUSSION

The School Board Defendants, Nathan Bishko, Terry Wallace, Walter Calinger and the Richmond Heights Board of Education have filed a Motion for Summary Judgment (ECF #39) asserting that Plaintiffs' claims are barred by the doctrine of res judicata and that both her state and federal claims are barred by claim preclusion. Further, even if the claims were not barred, the School Board Defendants contend that they are entitled to Summary Judgment on all of Plaintiffs' federal and state claims on their merits.

The Police and City Defendants, Michael Gerl, Denise DeBiase and the City of Richmond Heights, have also moved for summary judgment (ECF #41) asserting that they are entitled to judgment as a matter of law on Plaintiffs' state and federal claims.  Plaintiffs have filed memoranda in opposition to both motions for summary judgment and the Defendants' have filed reply memoranda.  The Motions for Summary Judgment are now ready of review.  Each motion will be addressed in turn.**[5]**

### I.  THE SCHOOL BOARD DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The School Board Defendants assert that Plaintiffs' state and federal claims are barred by

---

[5]

All of the Defendants assert that Sharon Lausin has no standing to bring claims for relief for alleged violations of her daughter's civil rights because a cause of action pursuant to § 1983 is personal to the victim of the alleged deprivation of rights.  *Claybrook v. Birchwell*, 199 F.3d 350, 357 (6th Cir. 2000).  Further, when Gina became 18 years old, Sharon lost her standing to bring this lawsuit in a representative capacity on behalf of Gina.  *See Vandiver v. Hardin Cty. Bd.of Edn*., 925 F.2d 927, 930 (6th Cir. 1991).  While Gina was a minor when the incident occurred, this action was commenced after Gina turned 18. Thus, the Court agrees that Sharon Lausin does not have standing to bring claims for relief for alleged violations of Gina's civil rights.  Nevertheless, the Court will continue to refer to the Plaintiffs in the plural throughout this Memorandum.

11

the doctrine of *res judicata*.  As described in the factual background section above, the state trial court granted Defendants' Motion for Judgment on the Pleadings on Plaintiffs' state law claims finding that the School Board Defendants were entitled to immunity under R.C. § 2744. That order, however, was not a final order resolving all claims against all defendants.  Moreover, the final order entered in the action by the state court was an order dismissing the action without prejudice based upon the Plaintiffs' notice of voluntary dismissal. As such, it cannot support a finding of *res judicata*.  Thus, while it cannot be disputed that Plaintiffs have had more than enough bites at this apple and that it is unseemly that they should not be bound by their stipulation filed in this Court that they were not asserting federal or constitutional claims based on this incident, nevertheless, their claims will be addressed on the merits.[6]

### A. Federal Claims

Plaintiffs brings a claim under 42 U.S.C. § 1983 asserting that the School Board Defendants have violated Gina's rights secured by the Fourth and Fourteenth Amendments to the Constitution. The purpose of § 1983 is to deter state actors from using the badge of their

---

[6] The School Board Defendants' argument that Plaintiffs' failure to exhaust administrative remedies bars the federal and state claim has merit.  Plaintiffs failed to appeal the Board of Education's expulsion determination to the Court of Common Pleas as required under R.C. 2506.  Such failure acts as a bar to a plaintiff challenging the Board's findings of fact and legal determinations.  *Davet v. City of Cleveland*, 456 F.3d 549, 552 (6th Cir. 2006).  Plaintiffs' federal and state claims appear to be based upon challenging the sufficiency of the evidence presented and the determinations made during the expulsion proceedings.  Moreover, Plaintiffs' claim that their counsel did not receive notice of the Board's decision does not save them.  Under R.C. 2506, the notice requirement for an administrative appeal is satisfied if notice is sent either to the interested party or such party's attorney.  In this case, notice of the Board's expulsion decision was mailed to the Plaintiffs' residence on March 12, 2007, at which time the 30 day period in which to appeal began to run.  Thus, for this additional reason, the claims asserted against the School Board Defendants fail as a matter of law.

12

authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails.  *See Wyatt v. Cole*, 504 U.S. 158, 112 S. Ct. 1827 (1992). Section 1983 alone does not create substantive rights; rather, it is a vehicle by which plaintiffs can assert claims based upon federal rights created by other statutes.  *See Blessing v. Freestone*, 520 U.S. 329, 340 (1997).

In order to establish liability under § 1983 against state officials, a plaintiff must show that the officials, acting under color of state law, caused the deprivation of a federal right.  *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (citing *Monroe v. Pape*, 365 U.S. 167 (1961)). In other words, the terms of § 1983 demand only two allegations:  (1) that a person deprived the plaintiff of a federal right, constitutional or statutory; and (2) that the person acted under color of state law when depriving the plaintiff of the federal right.  *See Gomez v. Toledo*, 446 U.S. 635, 640 (1980).  If either element is missing, then a § 1983 claim has not been pleaded.  *See Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).  A municipality may be held liable pursuant to 42 U.S.C. § 1983 if the municipality itself caused the constitutional deprivation.  *See Monell v. Department of Social Servs.*, 436 U.S. 658, 690 (1978).  Each alleged Constitutional violation will be addressed in turn.

### 1. Procedural Due Process

Plaintiffs claim that the School Board Defendants' failed to provide Gina with sufficient procedural due process before issuing the 10 day suspension and before expelling her. The School Board Defendants counter that Gina received all of the process that she was due before each action was taken.

The Due Process clause of the Fourteenth Amendment protects public school students

13

from arbitrary suspension.  *Goss v. Lopez*, 419 U.S. 565 (1975).

> The authority possessed by the State to prescribe and enforce standards of
> conduct in its schools, although concededly very broad, must be exercised
> consistently with constitutional safeguards. Among other things, the State
> is constrained to recognize a student's legitimate entitlement to a public
> education as a property interest which is protected by the Due Process
> Clause and which may not be taken away for misconduct without
> adherence to the minimum procedures required by that Clause.

*Id.* at 574.  In *Goss*, the Supreme Court found that due process requires, in connection

with a suspension of 10 days or less, that the student be given oral or written notice of the

charges against him and, if he denies them, an explanation of the evidence the authorities have

and an opportunity to present his version. Generally, notice and hearing should precede the

student's removal from school, since the hearing may almost immediately follow the misconduct,

but if prior notice and hearing are not feasible, as where the student's presence endangers persons

or property or threatens disruption of the academic process, thus justifying immediate removal

from school, the necessary notice and hearing should follow as soon as practicable. *Id*. at 738-

741.

In this case the Plaintiffs were present for a suspension hearing held at the Richmond

Heights Police Department.  At the hearing Plaintiffs were given oral notice of the charges

against Gina and Gina verbally confessed to writing the threat on the bathroom wall.  Gina

signed the notice of suspension which explained the charges and the school rules that were

violated.  Under the *Goss* precedent this process comports with the requirements of the due

process clause.  The fact that Plaintiffs did not have counsel at the suspension hearing or that

Gina was not permitted to consult with her mother prior to the hearing does not offend due

process.  Procedural due process for a ten day suspension does not require the hearing to be

14

delayed so that a student may consult with an attorney or parent. *Id.*  Moreover, Plaintiffs'

assertions that they did not have sufficient time or fair opportunity to answer the charges is

completely overcome by Gina Lausin's verbal confession during the suspension hearing in

addition to the written confession obtained by the Richmond Heights Police. Accordingly, the

process afforded Plaintiffs by the School Board Defendants in connection with the 10 day

suspension satisfied the procedural due process requirements of  the Fourteenth Amendment.

The process Plaintiffs received during the expulsion hearing before Superintendent

Calinger and the appeal of her expulsion to the Board of Education also comported with the

requirements of the Due Process Clause of the Fourteenth Amendment.  The Supreme Court has

determined that the two basic due process requirements are notice and an opportunity to be

heard.  *Goss*, 419 U.S. at 579.  The type and extent of the notice and hearing required vary

depending upon the circumstances.  Thus, because the punishment of expulsion is greater than a

short suspension, Plaintiff's interest is stronger and the process due to protect that interest may

be more involved.  *See Flaim v. Medical College of Ohio*, 418 F.3d 629 (6th Cir. 2005).  Thus,

the notice required may be more involved, such as being in writing with a list of the rules the

accused is charged with violating and the possible punishments.  Further, the hearing, whether

formal or informal, must be meaningful and must provide the accused with the opportunity to

respond, explain and defend.  *Id.* at 635-636.   These requirements were met in this instance.

Notice of the expulsion hearing was presented to Sharon Lausin on March 23, 2006.  A school

expulsion hearing was held on April 3, 2006, before the Richmond Heights Schools

Superintendent Dr. Walter Calinger.  Gina was represented by an attorney at the hearing.  Sharon

and Gina Lausin both testified at the hearing.  Gina presented expert testimony from an alleged

polygraph expert and a report from an alleged handwriting expert.  Following the hearing, Dr.

Calinger determined that Gina should be expelled for a period of 80 days.  Plaintiffs were also

given an expulsion appeal to the Board of Education, during which Gina was represented by

counsel and was permitted to present evidence to the Board of Education.  These procedures

more than complied with the requirements of the Due Process Clause of the Fourteenth

Amendment.  In sum, Plaintiffs' procedural due process rights were not violated by the Board of

Education Defendants.


### 2. Substantive Due Process

The substantive component of the due process clause "forbids the government to infringe

certain fundamental [rights] *at all,* no matter what process is provided...." *Reno v. Flores,* 507

U.S. 292, 302, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993) (emphasis in original). A fundamental right

is one that is "so rooted in the traditions and conscience of our people as to be ranked as

fundamental." *Id.* at 303, 113 S.Ct. 1439 (quotation marks and citation omitted). Substantive due

process rights are created only by the Constitution.  *Regents of Univ. of Michigan v. Ewing,* 474

U.S. 214, 229 (1985).  Government actions that burden the exercise of these fundamental rights

are subject to strict scrutiny, and will only be upheld when they are narrowly tailored to a

compelling government interest.  *Seal v. Morgan*, 229 F.3d 567, 575 (6th Cir. 2000).

Government actions that do not affect a fundamental right will be upheld if they are rationally

related to a legitimate government interest.  *Id*. at 575.

The Supreme Court has held that the right to attend public school is not a fundamental

right for the purposes of a substantive due process analysis.  *San Antonio Indep. Sch. Dist. v.*

16

*Rodriguez*, 411 U.S. 1, 33-37 (1973).  Since Plaintiffs have not shown that a fundamental right has been implicated, the rational basis test applies here.  Thus, Plaintiffs must demonstrate that there is no rational basis between the punishment imposed by the School Board Defendants and the offense committed by Plaintiff.  Rational basis review is a deferential standard under which government action is afforded a strong presumption of validity.  *Midkiff v. Adams County Reg'l Water Dist.*, 409 F.3d 758, 770 (6th Cir. 2005).  Indeed, in reviewing school disciplinary decisions, the Supreme Court noted: "it is not the role of the federal courts to set aside decisions of school administrators which the court may view as lacking a basis in wisdom or compassion." *Wood v. Strickland*, 420 U.S. 308, 326 (1975).

In this case the School Board Defendants found that Gina committed violations of school rules as a result of defacing school property, threatening the lives of students and causing panic throughout the school.  Gina's confession secured by the Richmond Heights Police Department, as well as Gina's oral confession during her suspension hearing, supported this finding.  Gina's violations were substantial and the discipline given, suspension and expulsion, was rationally related to the severity of Gina's violation of school rules and regulations.

Plaintiffs' assertion that because Gina's confession was suppressed by the juvenile court, there could be no rational relationship between Gina's actions and the Board's discipline is misguided.  The Board of Education Defendants are not bound by the ruling in the juvenile court proceedings. There is no evidence that the Board of Education Defendants participated in the juvenile proceedings in any respect.  In any event, the Sixth Circuit has held that a plaintiff asserting a § 1983 claim cannot use *res judicata* against a defendant when evaluating the constitutionality of the defendant's actions "even if the state court that acquitted the plaintiff

17

found that a constitutional violation took place." *Potts v. Hill*, 77 Fed. Appx. 330, 335 (6th Cir. 2003). Thus, while the Board of Education Defendants were free to consider the confession obtained by the Richmond Heights Police, other evidence, including Gina's confession during the suspension hearing, support the Board of Education Defendants' finding that Gina wrote the threat on the bathroom wall and their decision to expel Gina as a consequence of her actions. It is clear from the evidence submitted that the punishment Gina received was rationally related to the offenses that she was found to have committed. Accordingly, Plaintiffs' substantive due process claim fails.

### 3. Fourth Amendment Claims

Plaintiffs claim that the School Board Defendants' "purposeful and knowing failure to investigate equally or more probable offenders was designed to cause and did cause Plaintiff Gina Marie Lausin's false arrest and false imprisonment ...." Amended Complaint, ¶4. In their brief in opposition, Plaintiffs state "if other information and any of the other girls had been interviewed and then Gina was identified as a prime suspect then a fourth amendment violation wouldn't be an issue." (ECF #47 at p.12).

The Fourth Amendment protects individuals from unreasonable searches and seizures. Plaintiffs do not appear to suggest that it was unreasonable for the School Board Defendants to investigate Gina or to search her locker based upon their knowledge of Gina and review of the surveillance tape. Rather, they claim that the School Board Defendants' failure to question other students and search other lockers led to violation of Gina's Fourth Amendment rights. Plaintiffs claim that this perceived lack of investigation prevented establishment of probable cause.

To the extent that Plaintiffs are claiming that the School Board Defendants subjected

18

Gina to an unreasonable search and seizure without probable cause, it is clear that in a school setting the standard for a Fourth Amendment analysis does not require probable cause. *Safford Unified School Dist. No. 1 v. Redding*, 129 S.Ct. 2633, 2639 (2009).  Rather, a standard of "reasonable suspicion" is applied to determine whether a student's Fourth Amendment rights have been violated. *Id.* at 2639.  A school administrator forms a reasonable suspicion when the circumstances known by the administrator establish a "moderate chance of finding evidence of wrongdoing." *Id.*  The evidence in this case shows that the School Board Defendants had reasonable suspicion to question Gina and search her locker given Mr. Bishko's experience and knowledge of Gina as well as the review of the surveillance tape.

Moreover, an assertion that the School Board Defendants' investigation was incomplete, without more, does not constitute a Forth Amendment violation. The School Board Defendants gathered the evidence they could and turned it over to the police after reporting the crime.  The evidence supports the School Board Defendants' suspicion of Gina. There is no claim that the School Board Defendants lied to the police about Gina or any other student, falsified evidence or in any way withheld exculpatory evidence.  Plaintiffs point to no authority for the proposition that the Fourth Amendment requires a school to continue an investigation after the evidence the school gathered was turned over to the police and the police secured a confession, especially when the confession was repeated in a face to face meeting with school officials and the student's parent.  Plaintiffs have not supported their claim that the School Board Defendants violated Plaintiff's Fourth Amendment rights and any such claim must be dismissed.

### 4. § 1983  Liability of Richmond Heights Board of Education

Plaintiffs seek to hold the Richmond Heights Board of Education liable under §1983 for

the alleged constitutional violations committed by the individual school defendants. Since *Monell*, the Sixth Circuit has recognized that a governmental entity may not be held liable under § 1983 based upon a theory of *respondeat superior. Biver v. Saginaw Tp. Community Schools*, 878 F.2d 1436, 1989 WL 74654 (6th Cir. 1989). Instead, a plaintiff may only hold a governmental entity liable under § 1983 where its official policy or custom actually serves to deprive an individual of his or her constitutional rights. *Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006). A plaintiff may look to the following in order to establish an illegal policy or custom: (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations. *See Thomas v. Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).

In this case, Plaintiffs make only conclusory allegations of pattern and practice, and provide no evidence of an official or unofficial policy that would give rise to the Board of Education's liability under § 1983. Moreover, to the extent that the Plaintiffs argue that the individual School Board Defendants have final policy making authority such that their actions may subject the Board to liability, such argument fails because Plaintiffs have failed to demonstrate that the individual school Defendants, Nathan Bishko, Terry Wallace and Walter Calinger, deprived Plaintiffs of any Constitutional right. Because the individual defendants did not violate Plaintiff's constitutional rights, Plaintiff cannot rely on their conduct to establish a claim of municipal liability. *Vereecke v. Huron Valley School Dist.*, 2010 WL 2499433 at * 12 (6th Cir. June 18, 2010). As the Supreme Court of the United States made clear in *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986):

20

> neither *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 98
> S.Ct. 2018, 56 L.Ed.2d 611 (1978), nor any other of our cases authorizes
> the award of damages against a municipal corporation based on the actions
> of one of its officers when in fact the jury has concluded that the officer
> inflicted no constitutional harm. If a person has suffered no constitutional
> injury at the hands of the individual police officer, the fact that the
> departmental regulations might have *authorized* the use of constitutionally
> excessive force is quite beside the point.

*See also, Peet v. City of Detroit*, 502 F.3d 557, 566 (6th Cir. 2007) (Since police officers did not

commit the constitutional wrong the plaintiff alleges, the City cannot be held liable under § 1983

for police conduct that inflicts no constitutional injury.)

There are no genuine issues of material fact regarding Plaintiffs' federal claims pursuant

to § 1983 and for the reasons set forth above, the School Board Defendants are entitled to

judgment as a matter of law on Plaintiffs' federal claims[7]

### .B. State Law Claims

While Plaintiffs have not specifically identified the state claims that they allegedly assert,

the School Board Defendants assert that they are entitled to summary judgment on these state

law claims because the Board of Education and the individual School Board Defendants are

entitled to immunity under Chapter 2744.[8]

---

[7]

Since the Court has determined that none of the individual School Board Defendants
violated Plaintiffs' constitutional rights and that the School Board Defendants are entitled
to Judgment on Plaintiff's § 1983 claim, there is no need to address Defendants'
argument that the individual School Board Defendants are entitled to Qualified
Immunity.

[8]

The School Board Defendants claim that the only state law claim brought by Plaintiffs is
false imprisonment/false arrest. They have argued that a false imprisonment claim
against the School Board Defendants fails on its merits because Gina was never arrested
or imprisoned by the School Board Defendants as evidenced by the fact that Gina was

The School Board Defendants assert that the Richmond Heights Board of Education is a "political subdivision" as defined by R.C. § 2744.01(F) and, therefore, R.C. Chapter 2744 is applicable.  *See Pearson v. Warrensvill Hts. City Schools*, 8th App. Dist. No. 88527, 2008-Ohio-1102, *citing Bradigan v. Strongsville City Schools*, Cuyahoga Ap. No. 88606, 2007-Ohio-2773.

Section 2744.02(A)(1) of the Ohio Revised Code, which provides immunity to political subdivisions in certain circumstances, provides:

> For the purposes of this chapter, the functions of political subdivisions are hereby classified as governmental functions and proprietary functions.  Except as provided in division (B) of this section, *a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.*

The next step in the analysis is to determine whether any of the exceptions to immunity under § 2744.02(B) apply to strip the political subdivision of immunity.  These exceptions occur when: (1) the injuries are caused by the negligent operation of a motor vehicle; (2) the injuries are caused by the negligent performance of proprietary functions; (3) the injuries are caused by the failure keep public roads, highways and streets open, in repair and free from nuisance; (4) the injuries are caused by negligence on the grounds of a building used for governmental purposes; or (5) the injuries are those for which liability expressly is imposed by the Ohio Revised Code.

---

free to leave the meeting in the Principal's office at any time.  Plaintiffs have not responded to this argument.  To the extent that Plaintiffs' have asserted a state law claim for false imprisonment/false arrest against the School Board Defendants, the Defendants' Motion for Summary Judgment is granted as to that claim.  The City and Police Defendants have read the Amended Complaint to include state claims of false arrest/false imprisonment, malicious prosecution and intentional infliction of emotional distress.  To the extent that Plaintiffs intended to assert such state claims against the School Defendants, the School Defendants are immune to all such state claims under Chapter 2744.

O.R.C. § 2744.02(B)(1)-(5).  If any of the exceptions are applicable, then, under the next step in the analysis, the political subdivision has the burden of demonstrating that one of the defenses set forth in § 2744.03 applies.  *See Cater v. Cleveland*, 83 Ohio St.3d 24, 28 (1998). If a defense is applicable, then immunity is reinstated.  *See id.*

The Richmond Heights Board of Education is a political subdivision, and as such, it has immunity under § 2744.02(A)(1).  Turning to the second step of the analysis, none of the exceptions to immunity under § 2744.02(B) apply to strip the Richmond Heights Board of Education of its immunity.  Accordingly, the Richmond Heights Board of Education has an absolute defense to Plaintiffs' claims under Ohio law.

Moreover, to the extent that Plaintiffs' state law claims are intentional torts, such as a claim for false arrest/false imprisonment, Ohio Courts have found that political subdivisions are immune from intentional torts as the exceptions set forth in R.C. § 2744.02(B) only address negligence.  *Ziegler v. Mahoning Cty. Sheriff's Dept.*, 137 Ohio App.3d 831, 836 (2000).  The Richmond Heights Board of Education is entitled to immunity for this additional reason. Accordingly, the Richmond Heights Board of Education is entitled to summary judgment on Plaintiffs' state law claims.[9]

The School Board Defendants also argue that the individual School Board Defendants, Mr. Bishko, Dr. Wallace and Dr. Calinger, are entitled to immunity.  Section 2744.03(A)(6) provides immunity from liability to employees of political subdivisions.  The Richmond Heights Board of Education is a political subdivision and Mr. Bishko, Dr. Wallace and Dr. Calinger are

---

[9]

Plaintiffs do not dispute that the Richmond Heights Board of Education is entitled to immunity under Chapter 2744.

23

employees of the Richmond Heights Board of Education.  Pursuant to § 2744.03(A)(6) employees of a political subdivision are immune from liability unless one of the following exceptions applies:

(a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;

(b) The employee's acts or omissions were with malicious purpose, in bad faith, or in wanton or reckless manner;

(c) Liability is expressly imposed upon the employee by a section of the Revised Code. R.C. § 2744.03(A)(6)(a)-(c).

Plaintiffs contend that the actions of Dr. Calinger, Dr. Wallace and Mr. Bishko demonstrated maliciousness and recklessness sufficient to exclude them from immunity. "Malice" is defined as the willful and intentional design to harm another by inflicting serious injury without excuse or justification.  *Garrison v. Bobbitt,* 134 Ohio App.3d 373, 384 (1999). "Recklessness" is a perverse disregard of a known risk.  *O'Toole v. Denihan*, 118 Ohio St.3d 374 (2008), at paragraph 3 of the syllabus.  The actor must be conscious that his conduct will in all probability result in injury.  *Id.*

Plaintiffs' basis for asserting that the conduct of  Mr. Bishko and Dr. Wallace was malicious or reckless was that they deliberately ignored other potential suspects and solely exposed Gina as the lone suspect to the Richmond Heights Police.  Plaintiffs offer no support for their allegations of deliberate ignorance of other potential suspects. As noted above, the investigation undertaken by Mr. Bishko and Dr. Wallace comported with the requirements of due process and was carried out in a manner designed to quickly identify potential suspects.  As

24

such, Mr. Bishko reviewed the surveillance tape and interviewed several students.  Based on this initial review, Dr. Wallace, with Mr. Bishko present, questioned Gina in his office while Gina's mother was present.  The interview was short and Gina and her mother left when Mrs. Lausin asked to leave.  The fact that Mr. Bishko and Dr. Wallace believed that Gina was the best potential suspect and conveyed that information to the Richmond Heights police does not support a finding that their investigation was flawed or that their conduct was in any way malicious or reckless.

With respect to Dr. Calinger, Plaintiffs claim that his conduct was malicious or reckless because he went forward with the expulsion hearing after it was evident "that something was totally wrong with process."  ECF #47 at p. 14. Again, Plaintiffs offer no support or explanation for this statement.  While Dr. Calinger decided to expel Gina after an expulsion hearing, there is no evidence that his decision was made with maliciousness or recklessness. In sum, Plaintiffs have failed to show that any of the exceptions to immunity apply to Mr. Bishko or Dr. Wallace or Dr. Calinger.  Accordingly, the individual School Board Defendants are entitled both to immunity under § 2744.03(A)(6) for all of Plaintiffs' state law claims.

Thus, for the reasons set forth above, the School Board Defendants' Motion for Summary Judgment (ECF #39) is GRANTED.


## II.  JOINT MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS MICHAEL GERL, DENISE DEBIASE AND THE CITY OF RICHMOND HEIGHTS

The City of Richmond Heights and Sgt. Michael Gerl and Detective Denise DeBiase move for summary judgment on Plaintiffs' Amended Complaint asserting that there is no genuine issue of material fact with respect to any of Plaintiffs' claims and that they are entitled

to judgment as a matter of law on all of Plaintiffs' claims. Plaintiffs bring claims pursuant to 42 U.S.C. § 1983 for unlawful search and seizure under the Fourth Amendment and for violation of Plaintiffs' substantive due process rights under the Fourteenth Amendment against the individual police defendants based upon the police officers' actions in detaining and questioning Gina Lausin. Plaintiffs also assert that the City of Richmond Heights is liable under § 1983 based upon allegations that the City has a pattern and practice of acting contrary to the known law and the City's policies and procedures. Plaintiffs also assert state law claims of false arrest, false imprisonment, malicious prosecution and intentional infliction of emotional distress.

### A. False Arrest/Imprisonment Under 42 U.S.C. § 1983

Plaintiffs appear to be alleging that Sgt. Gerl and Detective DeBiase violated Gina's Fourth Amendment rights to be free from unlawful seizure when they transported her to the Police Department and questioned her while her mother was absent. When a § 1983 claim is predicated on a claim of false arrest, false imprisonment, or malicious prosecution under the Fourth Amendment, such claim must fail if probable cause for arrest exists. That is, "[t]he existence of probable cause for an arrest totally precludes any [§] 1983 claim for unlawful arrest, false imprisonment, or malicious prosecution, regardless of whether the defendants had malicious motives for arresting the plaintiff." *Hansel v. Bisard*, 30 F.Supp.2d 981, 985-86 (E.D. Mich. 1998) (*quoting Mark v. Furay*, 769 F.2d 1266, 1269 (7th Cir. 1985)).

Probable cause to arrest requires "only the probability, and not a prima facie showing, of criminal activity...." *Illinois v. Gates*, 462 U.S. 213, 235 (1983). Probable cause exists when, at the moment the arrest was made, the facts and circumstances within the officers' knowledge were sufficient to warrant a prudent man to believe that an offense was being committed. *See*

26

*U.S. v. Dotson*, 49 F.3d 226, 230 (6th Cir. 1995) (citations omitted).  "[T]here is no precise formula for determining the existence or nonexistence of probable cause; rather, a reviewing court is to take into account 'the factual and practical considerations of everyday life' that would lead a reasonable person to determine that there is a reasonable probability that illegality has occurred." *U.S. v. Strickland*, 144 F.3d 412, 415 (6th Cir. 1998).  If an arrest was made without probable cause, however, courts have long recognized that the individual so arrested may bring a § 1983 claim for false imprisonment.  *See Baker v. McCollan*, 443 U.S. 137, 142-44 (1979).

In this case the evidence shows that Sgt. Gerl and Detective DeBiase acted with probable cause in transporting Gina to the police station and detaining her for questioning.  The information that the officers obtained from the school officials, comparison of the writing samples taken from Gina and the writing on the bathroom wall and the notebook found in Gina's locker containing racially demeaning statements supported the officers' determination that Gina should be the first person they questioned.  The totality of the circumstances are sufficient to warrant a prudent man to believe that Gina had written the threatening message. Hence, the Police Officer Defendants are entitled to summary judgment on Plaintiffs' false imprisonment claim brought under § 1983.[10]

**B. Substantive Due Process Claim**

Plaintiffs allege that the police department defendants' actions in bringing Gina to the

---

[10]

The Police Officer Defendants also assert that the fact that Gina voluntarily accompanied the officers to the police station and her mother did not object to Gina's going with the officers (presumably arguing that Gina was not arrested, seized or imprisoned), further negates any possible Fourth Amendment violation. While this argument may be true, it is unnecessary as probable cause to arrest and hold Gina for questioning existed.

police department and questioning her without her mother in attendance (the Fourth Amendment

Claim), as well as the officer's conduct in obtaining Gina's confession violated Gina's

substantive due process rights.  An aggrieved person is entitled to raise a substantive due process

claim if a particular violation is not covered by a more definite constitutional provision. See

*Graham v. Connor,* 490 U.S. 386, 395  (1989) ( if a constitutional claim is covered by a specific

constitutional provision, the claim must be analyzed under the standard appropriate to that

specific provision, not under substantive due process.)  To the extent that Plaintiffs seek to

recover for Gina's allegedly unlawful arrest or seizure, that claim is covered by the Fourth

Amendment and may not be treated as a separate substantive due process claim.  As the Court

has already determined that the police defendants had probable cause to arrest and question

Gina, Plaintiffs' § 1983 claim alleging a Fourth Amendment violation fails.

　　　　Thus, Plaintiffs' claim that the police defendants violated her substantive due process

rights is based upon the officer's conduct in questioning her without her mother being present

and the methods in which they obtained her confession.  Federal courts have long recognized

that the touchstone of due process, including substantive due process, "is protection of the

individual against arbitrary action of government." *County of Sacramento v. Lewis,* 523 U.S.

833, 845 (1998). Only the most egregious official conduct can be said to be arbitrary in the

constitutional sense of the word. *Id.* at 846.  The test, as articulated by the Supreme Court over a

half century ago, is whether the challenged conduct "shocks the conscience." *Id.* (quoting

*Breithaupt v. Abram,* 352 U.S. 432 (1957), which noted that only conduct which was so brutal

and offensive that it did not comport with the traditional ideas of fair play and decency would

violate substantive due process).

28

The "shocks the conscience" standard has been explored over the years by the Supreme Court.  What shocks the conscience is dependent upon the context of the situation and each case must be judged on its own specific facts.

> It should not be surprising that the constitutional concept of conscience shocking duplicates no traditional category of common-law fault, but rather points clearly away from liability, or clearly toward it, only at the ends of the tort law's spectrum of culpability. Thus, we have made it clear that the due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm. We have accordingly rejected the lowest common denominator of customary tort liability as any mark of sufficiently shocking conduct, and have held that the Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process. ... It is, on the contrary, behavior at the other end of the culpability spectrum that would most probably support a substantive due process claim; conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level. See *Daniels v. Williams,* 474 U.S., at 331, 106 S.Ct., at 665 ("Historically, this guarantee of due process has been applied to *deliberate* decisions of government officials to deprive a person of life, liberty, or property" (emphasis in original)).

*County of Sacramento v. Lewis*, 523 U.S. 833, 848-849 (1998) Thus, in some instances, courts have applied a "deliberative indifference" standard in cases involving police actions where the police have had time to deliberate before taking action.  *See Id.* at 851. ("As the very term "deliberate indifference" implies, the standard is sensibly employed only when actual deliberation is practical....")

Plaintiffs argue that the conduct of Sgt. Gerl and Detective DeBiase during their questioning of Gina at the police station violated her substantive due process rights– that Defendants' actions "shocked the conscience" or were at the very least, "deliberately indifferent"

to a fundamental right of Gina's not to be coerced into a confession.

Whether a person's due process rights were violated in the course of taking his statement hinges on the voluntariness of the statement. *U.S. v. Rutherford,* 555 F.3d 190, 195 (6th Cir. 2009)*; Colorado v. Connelly,* 479 U.S. 157, 166 (1986); *United States v. Johnson,* 351 F.3d 254, 260 (6th Cir.2003). There is no bright-line rule for determining whether a suspect's statements were given voluntarily. Voluntariness is instead judged by the "totality of the circumstances" in which the person made the statement. *United States v. Greene,* 250 F.3d 471, 479 (6th Cir.2001). To frame this analysis, the Sixth Circuit has set forth three factors for courts to consider: "(i) the police activity was objectively coercive; (ii) the coercion in question was sufficient to overbear the defendant's will; and (iii) the alleged police misconduct was the crucial motivating factor in the defendant's decision to offer the statement." *United States v. Mahan,* 190 F.3d 416, 422 (6th Cir.1999).  Even when the police are conducting a custodial interrogation, the Supreme Court has held that mere deception will not violate a person's due process rights. *Moran,* 475 U.S. at 423.  Rather, "Coercive police activity is a necessary predicate to a finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Connelly, supra*, 479 U.S. at 166. This is a high standard to overcome and is not satisfied merely by showing that a police officer lied.

Review of the evidence in this situation shows that Plaintiffs have not met this burden. The evidence reflects that Gina's confession was not coerced and was voluntary.  The officers gave Gina her Miranda warning and there is no evidence that Gina did not  understand her rights. Gina did not request that her mother be present or that she be provided with a lawyer.  While the police officers admit misrepresenting certain facts to Gina, such as their claim that they had

handwriting analysis finding that Gina had written the Threat and that only four students were in the restroom during the time period at issue, three of whom were African-American, these misrepresentations did not rise to the level of coercive police activity. The Sixth Circuit has held that an officer's use of misleading statements or misrepresentations during an interview does not render a subsequent confession involuntary. *Ledbetter v. Edwards*, 35 F.3d 1062, 1069 (6th Cir. 1994) ("A defendant's will is not overborne simply because he is led to believe that the government's knowledge of his guilt is greater than it actually is.") Given the fact that the interview lasted only 15-20 minutes, it is clear that the police did not put overbearing pressure on Gina. Further, Gina was alone when she wrote her confession and apology in her own words. Finally, the suppression of Gina's confession in the juvenile proceedings does not have preclusive effect on this Court as these police defendants were not parties to that action and the legal standards applied in a criminal proceeding versus a civil proceeding involving substantive due process are different. Under the totality of the circumstances in this case, the actions of Sgt. Gerl and Detective DeBiase were not coercive and did not overbear Gina's will sufficient to make her confession involuntary.

Moreover, the fact that Sharon Lausin was not present during Gina's interview does not violate substantive due process. As noted above, Gina did not request that her mother be present and Sharon Lausin consented to Gina's transport to the police station for questioning. The absence of a juvenile defendant's parent does not *per se* render the defendant's confession involuntary because voluntariness depends on the totality of the circumstances. *Williams v. Jones*, 117 Fed. Appx. 406, 412 (6th Cir. 2004). The totality of the circumstances in this case support the finding that the police defendants did not coerce Gina's confession and that her

31

confession was voluntary.  Accordingly, Plaintiffs' § 1983 claim against Sgt. Gerl and Detective

DeBiase for violation of Gina's substantive due process rights fails.

### C. Monell Claim against the City of Richmond Heights

Plaintiffs allege that the supervisors of Sgt. Gerl and Detective DeBiase approved their

filing of a complaint against Gina in Juvenile Court and that such approval suggests the

existence of a pattern or practice of condoning behavior that is inconsistent with the law and/or

policies and procedures of the City of Richmond Heights Police Department.  Amended

Complaint, ¶ 14.  Plaintiffs also assert that the City failed to train Sgt. Gerl and Detective

DeBiase. Amended Complaint, ¶20.

Moving first the claim of failure to train, A plaintiff may bring a § 1983 claim based on

inadequacy of police training only if the alleged failure to train amounts to deliberate

indifference to rights of individuals with whom the police come into contact.   *See Canton v.*

*Harris*, 489 U.S. 378, 388 (1989).  That is, only where a municipality's failure to train evidences

a "deliberate indifference" can such a shortcoming be properly thought of as a "policy or

custom" actionable under § 1983.   *See id.* at 389.  Simple negligence is thus insufficient to

maintain a § 1983 claim based upon a failure to train or supervise. *See Hays v. Jefferson County*,

668 F.2d 869, 872 (6th Cir. 1982).  Deliberate indifference arises if the state actors should have

known, either based on a history of constitutional violations or because such likelihood was

obvious, that constitutional rights violations were likely absent better training.  *See Morrison v.*

*Board of Trustees of Green Township*, 529 F. Supp. 2d 807, 823 (S.D. Ohio 2007).  Based on the

foregoing, in order to prevail on such a municipal liability claim, a plaintiff must demonstrate:

(1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was

32

the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury. *See id.* (*citing Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006)).

Upon thorough review of the record, the Court finds that Plaintiff fails to produce any evidence that City of Richmond Height's training or supervision was inadequate. Even assuming *arguendo* that the City's training or supervision was inadequate, Plaintiff offers no evidence of the City's deliberate indifference. In sum, because Plaintiffs fail to offer sufficient evidence demonstrating that the training or supervision was inadequate, the inadequacy was the result of the City's deliberate indifference, and the inadequacy was closely related to or actually caused the alleged injury, their § 1983 claim against the City for failure to train fails. Similarly, Plaintiffs have not offered evidence that the City of Richmond Heights maintains an unconstitutional custom or policy for the detention and questioning of juveniles and the filing of complaints of juvenile delinquency. As noted in Section A(4) of this Memorandum Opinion, a plaintiff may only hold a governmental entity liable under § 1983 where its official policy or custom actually serves to deprive an individual of his or her constitutional rights. *Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006). A plaintiff may look to the following in order to establish an illegal policy or custom: (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations. *See Thomas v. Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).

In this instance Plaintiffs attempt to combine two methods–actions taken by officials with final decision making authority and a custom of tolerance of federal rights violations–to establish

33

an illegal policy or custom.  Specifically, Plaintiffs argue that Chief Rowe affirmed Sgt. Gerl and Detective DeBiase's unconstitutional conduct, thus making official policy that the City of Richmond Heights knowingly condones unconstitutional conduct. (See ECF #48 at p. 11) Plaintiffs' argument falls short, however, because Chief Rowe did not take any unconstitutional actions.  Thus, while Chief Rowe may be an official with final decision making authority, he did not interview Gina or deprive her of any constitutional rights, nor did he refer her case to the juvenile prosecutor.  Moreover, even if it could be said that he condoned Sgt. Gerl and Detective DeBiase's conduct, the Court has determined that the conduct of the two officers did not violate Gina's constitutional rights.

Chief Rowe's actions in this case do not support any contention that the City of Richmond Heights has a custom of tolerance for federal rights violations. In order to support a claim for municipal liability on the basis of an unwritten policy of tolerating federal rights violations, a plaintiff must show:

> (1) the existence of a clear and persistent pattern of [illegal activity];
>
> (2) notice or constructive notice on the part of the [defendant];
>
> (3) the [defendant's] tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and
>
> (4) that the [defendant's] custom was the "moving force" or direct causal link in the constitutional deprivation.

*Thomas, supra* at  429 *citing Doe v Claiborne Cty*., 103 F.3d 495, 508 (6th Cir. 1996)

Plaintiffs fail to make the required showing in several respects.  First, Plaintiffs point only

34

to the actions taken against Gina. Thus, they have failed to show a clear and persistent pattern of unconstitutional conduct. The presence of a custom or policy that is unconstitutional cannot be established by evidence of a single instance of allegedly unconstitutional conduct. *Id*. at 433; *Peet v. City of Detroit*, 502 F.3d 556, 567-68 (6th Cir. 2007). Moreover, Plaintiffs cannot show that the City's custom was the moving force or direct cause of Plaintiffs' constitutional deprivation because the Court has found that Gina did not suffer any constitutional deprivation. Accordingly, the Court finds that Plaintiffs have failed to support a claim of municipal liability against the City of Richmond Heights based upon custom and policy or inadequate training. Therefore, the City of Richmond Heights is entitled to summary judgment on Plaintiffs' *Monell* claim.[11]

### D. State Law Claims of false arrest, false imprisonment and malicious prosecution against Sgt. Gerl and Detective DeBiase.

Plaintiffs' state law claim of false arrest/ false imprisonment fails for the same reason as their false arrest/false imprisonment claim brought pursuant to § 1983. The officers had probable cause to arrest and hold Gina for questioning. *See Finn v. Vill. Of Amelia*, No. 88-10-073, 1989 WL 27770, at *3 (Ohio Ct. App. Mar. 27, 1989) (In an action for false arrest and imprisonment against law enforcement officers under Ohio law, 'Fourth Amendment standards for determining lawful and unlawful detentions by the police are to be applied'.) *Radvanxky v. City of Olmsted Falls*, 395 F.3d 291, 315 (6th Cir. 2005) (detention based on probable cause

---

[11]

Since the Court has determined that neither Sgt. Gerl nor Detective DeBiase violated Plaintiffs' constitutional rights and that they are entitled to Judgment on Plaintiff's § 1983 claim against them, there is no need to address Defendants' argument that the officers are entitled to qualified immunity.

defeats false arrest/false imprisonment claim.).

Plaintiffs also appear to allege a state law claim of malicious prosecution asserting that Sgt. Gerl and Detective DeBiase "knowingly, intentionally and egregiously" filed a criminal complaint against Gina Lausin in juvenile court. (Amended Complaint, ¶14.)  To prevail on a malicious prosecution claim under § 1983 or Ohio common law, Plaintiffs must establish: (1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused.  *See Briner v. City of Ontario*, No. 1:07CV129, 2007 WL 2891343, at *4 (N.D. Ohio Sept. 28, 2007) (*citing Criss v. Springfield Township*, 56 Ohio St.3d 82, 84 (1990)); *William v. Cambridge Bd. Of Edn*, 370 F.3d 630, 642-43, *quoting Trussell v. Gen. Motors Corp*., 559 N.E.2d 732, 735 (Ohio 1990).

It is immediately clear that Plaintiffs have failed to establish the first two elements of the claim.  There is no evidence that Sgt. Gerl or Detective DeBiase acted with malice in filing a delinquency complaint against Gina in the Cuyahoga County Juvenile Court.   There is no evidence that the police officers expressed any desire or applied any pressure for the initiation of criminal proceedings against Gina.  As discussed above, the officers had probable cause to believe that Gina had written the threat after she confessed in writing and then again orally in the meeting with her mother and the school officials.  Detective DeBiase states in her report that she consulted with Juvenile Prosecutor Brandon Diemert who advised what charges would be brought against Gina. (DeBiase report, p. 3)  Accordingly, Plaintiffs have failed to demonstrate malice and a lack of probable cause.  It is clear that Plaintiffs cannot demonstrate  state law claims of malicious prosecution or false imprisonment/false arrest.  Accordingly, Defendants Gerl and DeBiase are entitled to summary judgment on these claims.

### E.  Intentional Infliction of Emotional Distress ("IIED")

Plaintiffs allege that as a result of the actions of Defendants individually, in concert or collectively, Plaintiffs "suffered great humiliation, embarrassment and emotional trauma and were subjected to the unwarranted scorn and ridicule of their peers and members of their community." (Amended Complaint, ¶15) The Supreme Court of Ohio, in *Yeager v. Local Union 20,* 6 Ohio St. 3d 369, 374 (1983) (abrogated on other grounds), set forth the elements of IIED. "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress. ..." *Id.* at 374. Emotional distress is severe if "a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case." *Paugh v. Hanks*, 6 Ohio St. 3d 72, 78 (1983).  Examples of serious emotional distress "include traumatically induced neurosis, psychosis, chronic depression, or phobia." *Id.*  Thus, courts only permit liability for IIED where "the conduct has been so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Yeager*, 6 Ohio St. 3d at 375.  In the case at bar, while Plaintiffs no doubt experienced embarrassment and anxiety in relation to the actions of Defendants, it is clear that their distress did not reach the level required by *Yeager* and its progeny.  Moreover, there is no evidence that Defendants intended to cause Plaintiffs extreme emotional distress, rather they were merely doing their jobs in a professional manner.  As discussed above, the Police Defendants had probable cause to arrest and question Gina and after her confessions, were justified in referring her case to the juvenile prosecutor. Defendants actions were in no way extreme or outrageous.  Accordingly, the Police and City Defendants are

entitled to summary judgment on this claim.[12]

**F. Police and City Defendants Immune from liability on Plaintiffs' state law claims under R.C. Chapter 2744**

Even if Plaintiffs' state law claims had merit, the Police and City Defendants are immune from Plaintiffs' state law claims under Chapter 2744.  As discussed above with respect to the School Defendants, pursuant to § 2744.02(A)(1), "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function" unless one of the exceptions set forth in §2744.02(B) applies.  The City of Richmond Heights is a political subdivision as defined in §2944.01(F) and Sgt. Gerl and Detective DeBiase are employees of the City of Richmond Heights. The provision of police services is a governmental function pursuant to § 2744.01(C)(2)(a).

The exceptions provided in § 2744.02(B) include: (1) the injuries are caused by the negligent operation of a motor vehicle; (2) the injuries are caused by the negligent performance of proprietary functions; (3) the injuries are caused by the failure keep public roads, highways and streets open, in repair and free from nuisance; (4) the injuries are caused by negligence on the grounds of a building used for governmental purposes; or (5) the injuries are those for which liability expressly is imposed by the Ohio Revised Code.  R.C. § 2744.02(B)(1)-(5).  If any of the exceptions are applicable, then, under the next step in the analysis, the political subdivision

---

[12]

To the extent that Plaintiffs assert an IIED claim against the School Defendants, there is no evidence to support such a claim against those defendants as well.

has the burden of demonstrating that one of the defenses set forth in § 2744.03 applies.  *See Cater v. Cleveland*, 83 Ohio St.3d 24, 28 (1998). If a defense is applicable, then immunity is reinstated.  *See id.*

In this case, the City of Richmond Heights is a political subdivision providing governmental services and is thus immune under § 2744.02(A)(1) as none of the exceptions set forth in § 2744.02(B) apply.  Accordingly, the City is entitled to immunity on all of Plaintiffs' state law claims.

Sgt. Gerl and Detective DeBiase are employees of a political subdivision performing governmental functions. Pursuant to § 2744.03(A)(6) employees of a political subdivision are immune from liability unless one of the following exceptions applies:

(a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;

(b) The employee's acts or omissions were with malicious purpose, in bad faith, or in wanton or reckless manner;

(c) Liability is expressly imposed upon the employee by a section of the Revised Code.

§ 2744.03(A)(6)(a)-(c).

The actions of Sgt. Gerl and Detective DeBiase at issue here were clearly within the scope of their employment.  As has been determined above, Sgt. Gerl and Detective DeBiase had probable cause to detain and question Gina.  Moreover, after obtaining Gina's confession and learning of her subsequent oral confession, the officers had sufficient reason to refer Gina's case to the juvenile prosecutor.  There is no evidence that the officers' actions were taken in bad faith

39

or for a malicious purpose or in a wanton or reckless manner. Further, there is no section of the Ohio Revised Code which imposes liability upon the officers.  Accordingly, Sgt. Gerl and Detective DeBiase are entitled to immunity on all of Plaintiffs' state law claims.

For the reasons set forth above, the City of Richmond Heights and Sgt. Gerl and Detective DeBiase are entitled to summary judgment on Plaintiffs claims and their Joint Motion for Summary Judgment (ECF #41) is granted.

## CONCLUSION

For the reasons set forth above, the Motion of Defendants Nathan Bishko, Terry Wallace, Walter Calinger and Richmond Heights Board of Education for Summary Judgment (ECF #39) and the Joint Motion of Defendants Michael Gerl, Denise DeBiase and the City of Richmond Heights for Summary Judgment (ECF #41) are GRANTED.

IT IS SO ORDERED.


   _Donald C. Nugent_____
DONALD C. NUGENT
UNITED STATES DISTRICT JUDGE

DATED:__July 15, 2010____

40